**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **No.:  17-cr-125 (RDM)** |
| **v.** | |
| **VASHAWN STRADER** | **Sentencing:  October 22, 2018** |
| **Defendant.** | |

**GOVERNMENT'S MEMEMORANDUM IN AID OF SENTENCING AND**
**MOTION FOR DOWNWARD DEPARTURE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of sentencing and motion for a downward departure.  Prior to indictment, defendant Vashawn Strader entered a cooperation plea agreement and pled guilty to a one-count Information charging him with Conspiracy to Commit Bribery, in violation of 18 U.S.C. § 371.  As a part of his plea, the defendant admitted to having paid bribes to an employee with the District of Columbia Office of the State Superintendent of Education ("OSSE") in exchange for that employee using her official position to cause OSSE to make payments to companies Strader controlled for work neither he nor his companies performed. Although the offense is very serious, the government asks that, in determining Strader's sentence, the Court consider his cooperation (which helped bring about the conviction of Shauntell Harley and his lack of criminal history.

Specifically, the government moves the Court for a four-level downward departure pursuant to the United States Sentencing Guidelines (the "Guidelines"), Section 5K1.1, based upon the determination by the Departure Committee of the United States Attorney's Office that Strader provided substantial assistance in the investigation and prosecution of others, as described in greater detail below.

Further, the government respectfully requests that the Court sentence the defendant to 30 months' imprisonment followed by three years of supervised release. Such a sentence is within the defendant's Guidelines range, taking into account the proposed downward departure, calculated at 30-47 months (Zone D) at proposed offense level 19.

## BACKGROUND

On June 29, 2017, the United States filed an Information charging the defendant with Conspiracy to Commit Bribery, in violation of 18 U.S.C. § 371. On July 18, 2017, pursuant to a cooperation agreement, the defendant plead guilty to that offense and the Court deferred setting a sentencing date. At the parties' request, on July 31, 2018, the Court scheduled sentencing for October 22, 2018.

The criminal conduct underlying the charge for which the defendant is to be sentenced relates to his 18-month scheme to bribe District of Columbia Office of the State Superintendent of Education ("OSSE") employee Shauntell Harley in exchange for Harley causing OSSE to pay companies Strader owned for work that was never performed. Harley was a Management Analyst for Fiscal Policy and Grant Management in OSSE's Division of Special Education. In that position, Harley was responsible for, among other things, issuing requests for services through the District of Columbia contract procurement process, ensuring that all authorized signatures were affixed to blanket purchase agreements, and reviewing invoices. Strader was the sole owner of Company A and the co-owner of Company B.

Strader and Harley got to know each other in approximately 2007-2009 when Harley worked for the District of Columbia Public Schools ("DCPS") and Strader periodically hand-delivered Company A invoices to the DCPS offices where Harley worked. The two lost touch when Harley left DCPS for a job at OSSE in 2009. They reconnected in 2011 when they bumped

into each other on the street one day.  In that conversation and thereafter, Strader and Harley hatched a plan through which Strader would pay Harley in exchange for favorable official action from OSSE for Company A.  Specifically, they agreed that Strader would create fraudulent invoices purporting to reflect early intervention services Company A had performed for DCPS students which, in fact, would not have been performed.  They also agreed that Harley would provide Strader with the information necessary to create these fraudulent invoices, including the purported dates of services, number of hours of services, and the total dollar value for each invoice. Harley agreed that, in exchange for Strader providing her with a portion of the proceeds fraudulently obtained through the submission of these invoices to OSSE, she would use her official position to create and submit fraudulent purchase orders and otherwise cause OSSE to make payments to Company A for work Company A did not perform.

Harley and Strader proceeded to execute on the scheme as they had agreed.  From at least July 2012 through January 2014, Harley and Strader communicated periodically in furtherance of the scheme.  Harley contacted Strader and provided him with the information to be included on Company A invoices.  Strader prepared these invoices, reflecting services that neither he nor Company A had performed, and provided them in person to Harley near OSSE's offices.  On some of these invoices, Strader included the names of real people who had purportedly performed the listed services.

Harley then used her official position to submit fraudulent documents and take other steps to cause OSSE to pay the invoices.  Some of these falsified documents included forged or copied signatures of District of Columbia government officials whose signatures were necessary in order for payments to be approved.  In exchange for Harley causing OSSE to make these payments to Company A, Strader made periodic cash payments to Harley and, in one case, paid Harley by

writing a check to one of Harley's close family members for Harley's benefit.  These payments totaled $43,900.

In total, Harley used her official position to cause $308,311.99 in payments to be made from OSSE to Company A and Company B for services the entities never performed.[1]  Strader withdrew these funds from Company A and Company B accounts and used the money for various personal expenses.

## MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K1.1

In a series of debriefings, proactive cooperation, and Statement of Offense, Strader substantially assisted the investigation and prosecution of others, advancing the investigation of the bribery scheme in which he and Harley engaged.  Among other things, Strader provided the government with information on his relationship with Harley and the bribery scheme in which the two of them had engaged.  Specifically, Strader admitted that, with Harley's assistance, he submitted fraudulent Company A invoices to OSSE (via Harley) for work neither he nor his company had performed and that he kicked back a portion of the fraudulent proceeds to Harley. Strader also described a litany of conversations and in-person meetings with Harley during which they discussed the scheme, including those in which Harley provided instructions to Strader about how to falsify his company invoices and conversations in which Harley demanded payment in cash and requested other things of value.  In addition to the information Strader provided to law enforcement about Harley, Strader made surreptitious recordings of Harley during which she made a number of incriminating statements.   In so doing, Strader substantially assisted the investigation and prosecution of Harley.  As the Court is aware, Harley subsequently pled guilty to two counts

---

[1] Due to an administrative error at OSSE, Company B's bank account information was listed as that for Company A, resulting in some payments meant for Company A being sent to Company B's account.

of Conspiracy to Commit Bribery, one of which related to her scheme with Strader. *See United States v. Shauntell Harley*, 18-cr-34.

In addition to Strader's assistance in the government's investigation and prosecution of Harley, Strader provided the government with information related to a foreign national who Strader believed may have overstayed her visa and described possibly inappropriate conduct by an employee of the Internal Revenue Service. Law enforcement did not take further action with respect to this information. Finally, Strader made a surreptitious recording of the subject in what was, at the time, a covert criminal investigation distinct from that involving Harley. That recording did not provide any assistance to the government's investigation.

On the basis of the foregoing, the government respectfully moves that the Court reduce Strader's offense level by four levels pursuant to U.S.S.G. § 5K1.1.

## GOVERNMENT'S POSITION ON SENTENCING

### A. Statutory Maximum Sentence

For the single count of Conspiracy to Commit Bribery to which Strader has pled guilty, he faces a maximum sentence of five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

### B. Sentencing Guidelines

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guideline range." *United States v. Gall*, 552 U.S. 38, 49 (2007) (citation omitted). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, and are the "starting point and the initial benchmark," *id.* at 49. The district court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50. Indeed, the Guidelines themselves are

designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a).  *Rita v. United States*, 551 U.S. 338, 348-49 (2007).

The government agrees with the Guidelines calculation in the Presentence Investigation Report ("PSR") in which the United States Probation Office concluded that Strader's total offense level is 23 and his criminal history category is I.  Prior to any consideration of a downward departure, Strader's Guidelines range is 46 to 57 months.  As noted above, however, the government believes a four-level downward departure is warranted.  Should the Court grant the requested departure, the defendant's offense level would be 19 and his Guidelines range would be 30-37 months' incarceration.

## ANALYSIS

Based on the factors set forth in § 3553(a), the Government recommends that this Court sentence Strader to 30 months' imprisonment, a three-year period of supervised release, order him to pay restitution to the District of Columbia in the amount of $308,311.99, and forfeit a money judgment of an equal amount.

This Court must consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;  (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

### A.   The Serious Nature of Strader's Conduct

Strader engaged in a scheme to enrich himself at the expense of a government program that provided much-needed services for children with disabilities and developmental delays.  To effectuate this scheme, Strader paid several substantial bribes to Harley, thereby harming the public institution for which Harley worked and the public's confidence in those who ostensibly work for the public good.  Strader's scheme was far from a momentary or short-lived lapse in judgment but spanned several years and involved the forgery of numerous documents and the depositing of checks from the District of Columbia consisting entirely of proceeds of his scheme. He had ample time to reflect on the wrongfulness of his course of conduct and, rather than put an end to his scheme, chose to continue to enrich himself at the expense of his victim.  Time after time, forged invoice after forged invoice, check after check, the defendant knew what he was doing was wrong and that it was a crime.

In considering the serious nature of the defendant's conduct, it also bears reiterating that the defendant forged various individuals' signatures and used their names without their permission as a means of executing the scheme.  Although not an offense of conviction, this constituted an aggravated identity theft, in violation of 18 U.S.C. § 1028A.  Congress made plain the seriousness with which it viewed such conduct when it imposed a mandatory sentence of two years' incarceration for such violations that must be served consecutively to any other sentence.

The circumstances of the offense also evidence the absence of any mitigating circumstances of the defendant's scheme.  The defendant did not steal the money out of selfless concerns or imminent needs. Instead, the defendant stole out of greed and a desire to spend the

stolen money in whatever means he chose.

The defendant's crime falls squarely within the class of cases to which the applicable Guidelines are addressed.  Thus, consideration of the nature and circumstances of the offense favors a sentence within the advisory Guidelines range.  Because the nature and circumstances of this offense also reflect repetitive and persistent criminal behavior and the bribery of a public official, this factor suggests that a sentence of incarceration is appropriate.

**B.  Strader's Personal Characteristics**

"In choosing the term of imprisonment within the guideline range, courts may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."  U.S.S.G. § 1B1.4.   Indeed, Congress has instructed that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661; *see also Pepper v. United States*, 562 U.S. 476, 489 (2011) (quoting *United States* v. *Tucker*, 404 U.S. 443, 446 (1972)) ("Both Congress and the Sentencing Commission thus expressly preserved the traditional discretion of sentencing courts to 'conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come'").

Apart from this offense, the PSR indicates that the defendant led a productive life.  The PSR also notes that the defendant was fortunate to have a good educational background and work history.  His education involved an undergraduate degree from Hampton University where he majored in political science.  His work history has consisted of being an entrepreneur in the form of the two very successful business, Companies A and B, he has owned and operated. Company A provided tutoring, mentoring, and counseling services to District of Columbia Public Schools

students and grossed between $100,000 and $300,000 per year. Company B maintains four investment properties worth nearly $2,000,000. Strader also has had limited contact with the criminal justice system, all of which were nearly two decades ago. Additionally, to this credit, the defendant accepted responsibility early and cooperated in the government's investigation.

C. **The Recommended Sentence is Consistent with the Need for the Sentence Imposed (A) to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; (B) to Afford Adequate Deterrence; and (C) to Protect the Public from Further Crimes of the Defendant.**

The recommended sentence is appropriate to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The defendant's offenses spanned nearly two years and resulted in a loss of over $300,000 to a program providing much-needed services for public school children. His punishment must also deter others from engaging in similar bribery and fraud schemes. The defendant's sentence, therefore, should serve to deter the defendant from future criminal conduct and warn others considering a corrupt path that the criminal law will deal harshly with those seeking to steal money – particularly those who bribe public officials to carry out their schemes. The question, in the government's view, is not whether incarceration is appropriate, but rather how much incarceration time is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). The government believes that the various factors in this case – in particular, the duration of the defendant's scheme, the manner and means used to repeatedly execute the scheme, the bribery of a public official, juxtaposed with the defendant's acceptance of responsibility, cooperation, and other considerations – all suggest that a sentence of 30 months of imprisonment is appropriate.

**D.  Forfeiture and Restitution**

The defendant should be ordered to pay $309,311.99 in restitution to OSSE and to forfeit a money judgment in an equal amount.

## CONCLUSION

For all the foregoing reasons, the appropriate considerations of sentencing favor the imposition of a sentence of 30 months' imprisonment followed by three years' supervised release.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472845


By:_____/s/_____
Peter C. Lallas
N.Y. Bar No. 4290623
Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530
(202) 616-2546
Peter.Lallas2@usdoj.gov